CHAMPION INTERNATIONAL
CORPORATION, Plaintiff,

and

State of North Carolina, ex rel., Department of Natural Resources and Community Development, Intervenor-Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; Lee M. Thomas, Administrator, U.S. Environmental Protection Agency; and Jack E. Ravan, Regional Administrator, Region IV, U.S. Environmental Protection Agency, Defendants,

and

State of Tennessee, on Behalf of the Tennessee Department of Health and Environment and the Tennessee Wildlife Resources Agency, Intervenor-Defendant,

and

Pigeon River Action Group; and the Legal Environmental Assistance Foundation, Intervenor-Defendants.

Civ. No. A–C–86–26.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 3, 1987.

Porter, Wright, Morris & Arthur, Columbus, Ohio by J. Jeffrey McNealey, Michael K. Glenn, Washington, D.C., Redmond, Stevens, Loftin & Currie, Asheville, N.C. by John S. Stevens and Gwynn G. Radeker, for plaintiff.

Alan S. Hirsch & Daniel C. Oakley, Asst. Attys. Gen., N.C. Dept. of Justice, Raleigh, N.C., for plaintiff-intervenor State of N.C.

U.S. Atty. Charles R. Brewer, Asst. U.S. Atty. Clifford Marshall, Asheville, N.C., F. Henry Habicht, II, Asst. Atty. Gen., Land and Natural Resources Div., Susan L. Smith, U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Defense Section, Washington, D.C., Jan Taradash, Office of General Counsel, U.S. E.P.A., Washington, D.C., Thomas M. DeRose, Office of Regional Counsel, Region IV, U.S. E.P.A., Atlanta, Ga., for defendants.

Gary A. Davis, Knoxville, Tenn., Sean Devereux, Asheville, N.C., for defendants-intervenors Pigeon River Action Group and Legal Environmental Assistance Foundation.

State of Tenn., Office of the Atty. Gen., Nashville, Tenn. by W.J. Michael Cody, Frank J. Scanlon & Michael D. Perigen, Robert W. Spearman, Raleigh, N.C., for defendant-intervenor State of Tenn.

## SUPPLEMENTAL MEMORANDUM OF DECISION

SENTELLE, District Judge.

THIS MATTER is before the court on Champion's motion for withdrawal of mandate in light of *International Paper Co. v. Ouellette,* — U.S. —, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). This action was filed by Champion and the State of North Carolina challenging the assumption of permitting authority by the Environmental Protection Agency (EPA), concerning wastewater discharge from Champion's western North Carolina papermill, as to which a permit had been approved by North Carolina. Tennessee, a downstream affected state, had objected to color standards in the North Carolina-issued permit, in part because of their alleged failure to meet Tennessee's color standards. On December 1, 1986, this court granted summary judgment for defendant EPA on three separate grounds; (1) the North Carolina-issued permit failed to include the factors to be considered and the methodology to be used by the Environmental Management Commission to judge compliance with the color standard in the permit; (2) the permit failed to require unequivocal compliance with any color standard; (3) the permit failed to require compliance with Tennessee's color standard and North Carolina failed to adequately explain its refusal to include Tennessee's recommendations in the permit. *Champion v. EPA,* 648 F.Supp. 1390 (1986). After carefully reviewing the prior opinion, the court concludes that nothing in *Ouellette* requires a reversal or modification of its prior judgment.

In *Ouellette,* a common law action for nuisance was filed in Vermont by Vermont residents against International Paper for discharge originating in New York. The Supreme Court held that when a court considers a state-law claim concerning interstate pollution that is subject to the Clean Water Act (CWA), the court must apply the law of the state in which the point source is located. *Ouellette,* — U.S. at —, 107 S.Ct. at 809.

*Ouellette* thus holds that, in a common law nuisance action, the law of the source state, not the "downstream" state, applies. It must apply the law of the source state. If the matter before this court had been a common law nuisance action and if this court had applied Tennessee's tort law, *Ouellette* would require a recall of this court's decision. However, this was not a nuisance action.

It could be argued that language in *Ouellette* dictates that the EPA not consider or apply an affected state's water quality standards in deciding whether to object to a discharge permit. However, that argument is not persuasive.

In reaching its decision, the Supreme Court reviewed the regulatory framework regarding interstate disputes under the CWA. It noted that even when a state has been given the primary permitting authority under the CWA, the administrator retains authority to block the issuance of any permit to which he objects. 33 U.S.C. 1342(d). *Id.* The Court further noted that while an affected state does *not* have the authority to block the issuance of a permit, it may apply to the EPA administrator, who then has the discretion to disapprove the permit if he concludes that the discharges will have an undue impact on interstate waters. 33 U.S.C. 1342(d)(2). *Id.* at —, 107 S.Ct. at 811. Of course, this discretion is subject to an arbitrary and capricious standard of review. *Cleveland Electric Illuminating Co. v. EPA,* 603 F.2d 1, 5–6 (6th Cir.1979).

Under the arbitrary and capricious standard, the reviewing court must determine whether the decision of the agency was based on a consideration of the relevant factors. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). An affected state's water standards are obviously relevant to a determination that the discharge would have an undue impact on

interstate waters. To hold otherwise would be to thwart the purposes of the CWA generally and the interstate dispute provision, 33 U.S.C. 1342(d)(2); 40 C.F.R. 123.44(c)(2). If the EPA was not permitted to consider the water standards of an affected state there would rarely be a legitimate interstate dispute.

In the Champion matter, Tennessee made recommendations to North Carolina regarding the Champion permit. Those recommendations were rejected. Tennessee properly applied to the EPA administrator for help in resolving the interstate dispute. *Ouellette* —— U.S. at ——, 107 S.Ct. at 811. The EPA determined that a 50 color unit level was necessary to meet the guidelines and requirements of the CWA. There was nothing improper in the EPA's reliance on the Tennessee color standard in reaching that determination. It was a "relevant factor" and had it not been considered, the EPA's action may well have been arbitrary and capricious. *Volpe, supra.*

While some of this court's prior language, particularly with reference to the third ground for sustaining EPA's actions, might be read as conveying an implication that Tennessee's color standard could control Champion's effluent, that language was not essential to this court's decision. Nothing in the regulatory framework surrounding the CWA would automatically require that a source state comply with the water quality standards of every downstream state. However, the EPA administrator does retain the discretion to assume permitting authority if he concludes that the discharges will have an undue impact on interstate waters. *Ouellette* at ——, 107 S.Ct. at 811. A downstream state's water quality standards may be relevant to such a determination. If the administrator determines that the discharge levels specified in a permit will have an undue impact on interstate waters, he may properly object, regardless of how those levels compare with the water quality standards of the downstream state or the source state. In the instant case, the administrator determined that the discharge levels contained in the Champion permit would have an undue impact on interstate waters. The fact that he considered Tennessee's color standards in reaching that determination does not make it improper.

After carefully reviewing its prior decision and the Supreme Court's opinion in *Ouellette*, this court concludes that there should be no change in the prior judgment and Champion's motion will be denied by order filed contemporaneously with this memorandum.

## JUDGMENT

THIS MATTER having come before the court on plaintiff's motion for withdrawal of mandate, and the issue having been determined, as shown by a Supplemental Memorandum of Decision entered contemporaneously herewith;

IT IS ORDERED, ADJUDGED AND DECREED that plaintiff's motion for withdrawal of mandate is hereby DENIED.

The Clerk is directed to send copies of the Supplemental Memorandum of Decision and this judgment to counsel for all parties.